# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE BOYLE and GERALD BOYLE,<br>    Plaintiffs,<br><br>    v.<br><br>CITY OF PHILADELPHIA, its Officials, Agents, Employees and Assigns,<br>    Defendants. | CIVIL ACTION<br><br><br><br>NO. 17-262 |

DuBois, J.                            February 16, 2018

## **M E M O R A N D U M**

### I.   INTRODUCTION

In this employment discrimination case, plaintiffs Lawrence Boyle and Gerald Boyle allege that they were unlawfully denied promotions and opportunities for promotions because of their race. Lawrence Boyle and Gerald Boyle, both Caucasian males, claim that the oral examination required for promotion in the Philadelphia Fire Department was designed, scored, and utilized to favor African American applicants. Plaintiffs assert claims of discrimination under 42 U.S.C. §§ 2000(e), *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 against the City of Philadelphia and Lloyd Ayers, former Acting Fire Commissioner. Presently before the Court is the City's Motion to Dismiss. For the reasons that follow, the Motion is granted in part and denied in part.

### II.   BACKGROUND

The facts as alleged in the Amended Complaint are as follows. In 2013, plaintiffs Lawrence Boyle and Gerald Boyle, both Caucasians, were employed by the City of Philadelphia Fire Department, Lawrence Boyle as a Fire Captain and Gerald Boyle as a Battalion Chief. Am. Compl. ¶¶ 5, 7.

In order to qualify for promotions at the times at issue in this case, Fire Department employees were required to pass an oral examination that is administered every two to three years. Am. Compl. ¶ 11. Promotions for the positions of Deputy Chief, Battalion Chief, and Captain were made from the pool of passing applicants and were based on the employee's score. Am. Compl. ¶ 12. The results of the examinations remained in effect for two years and were used for filling all vacancies that arose during that time period. Am. Compl. ¶ 12. Plaintiffs allege that the exam was "designed, scored, and utilized with a discriminatory intent to provide advancement based upon race" and did "have a discriminatory impact in favor of African-Americans and against white or Caucasian applicants." Am. Compl. ¶ 16.

The examination consisted of two questions: a "fire and safety" question and an "administrative question." Am. Compl. ¶ 13. An exam taker was given the first question with thirty minutes to craft a response. Am. Compl. ¶ 13. The exam taker then had fifteen minutes to present his answer orally to a two-judge panel. Am. Compl. ¶ 13. The process was repeated for the second question. Am. Compl. ¶ 13. Although the presentations were taped, applicants who passed were not permitted to listen to their answers. Am. Compl. ¶ 40.

Each judge gave two scores on a 1-10 scale, one for technical knowledge and the other for communication skills. Am. Compl. ¶ 13. The technical knowledge score counted for eighty percent of the total score and the communication skills score counted for the remaining twenty percent. Am. Compl. ¶ 13. The average of the judges' exam scores counted for ninety percent of an exam taker's final score. Am. Compl. ¶ 14. Up to an additional ten points were added for seniority—half a point for each year of seniority over ten years—and one additional point was added if the person had a bachelor's degree. Am. Compl. ¶ 14. The exam scores were published on a list, with applicants ranked from highest score to lowest score. Am. Compl. ¶ 15.

Plaintiffs allege that "[t]he test process was designed as part of a consent decree intended to increase the success of black applicants." Am. Compl. ¶ 34. According to plaintiffs, although the consent decree had been lifted, the City continued to use a system that was designed to increase the rate at which African American firefighters were promoted. Am. Compl. ¶ 34. Plaintiffs also allege that the exam grading was "subjective and enables the examiners to grade based upon the race of the applicant." Am. Compl. ¶ 23. Plaintiffs contend that the exam scores demonstrate a disparate impact on Caucasian firefighters in favor of African American firefighters. Am. Compl. ¶ 35.

Examinations for promotion for Deputy Chief and Battalion Chief were administered in January 2013. Am. Compl. ¶ 17. Gerald Boyle took the examination for promotion to Deputy Chief, and the results were posted on February 13, 2013. Am. Compl. ¶ 17. Out of the twenty-four applicants who passed the examination, Gerald Boyle was ranked twentieth. Am. Compl. ¶ 17. Seven of the twenty-four applicants who passed were African American, and the applicants who received the top three scores were African American. Am. Compl. ¶ 17. Of the firefighters who passed the exam, approximately fifty-seven percent of the African Americans firefighters were promoted, whereas only approximately twenty-three to thirty-five percent of the Caucasian firefighters were promoted. Am. Compl. ¶ 33. Gerald Boyle was not promoted. Am. Compl. ¶ 33.

Plaintiff Lawrence Boyle took the examination for promotion to Battalion Chief in 2013. Am. Compl. ¶ 29. Plaintiffs do not allege that Lawrence Boyle passed that examination. Of the thirty-seven applicants who passed the 2013 Battalion Chief examination, ten were African American. Am. Compl. ¶ 29. Plaintiffs allege that "[i]t is anticipated that at least eighty percent

of the African American firefighters that took the 2013 [Battalion Chief examination] will be promoted, continuing the disparate trend." Am. Compl. ¶ 30.

Plaintiffs additionally provide limited statistics for the Battalion Chief and Deputy Chief exams in 2007 and 2010. Sixty-six firefighters passed the 2007 Battalion Chief examination—nine were African American and fifty-seven were Caucasian. Am. Compl. ¶ 26. Of those applicants who passed, approximately forty-three percent of the African American applicants were promoted, whereas only twenty-nine percent of the Caucasian applicants were promoted. Am. Compl. ¶ 26. Forty-three employees passed the 2010 Battalion Chief examination. Am. Compl. ¶ 28. All of the African American applicants who passed the exam were promoted, whereas only thirty percent of the Caucasian applicants who passed were promoted. Am. Compl. ¶ 28. Although African American applicants made up sixteen percent of applicants who passed, they accounted for forty-one percent of the applicants who were promoted. Am. Compl. ¶ 35.

Plaintiffs state that, "Of the 30 firefighters that passed [the 2007 Deputy Chief examination], twenty five percent of African American Fire Fighters were promoted." Am. Compl. ¶ 31. Twenty-one firefighters passed the 2010 Deputy Chief examination. Am. Compl. ¶ 32. Of the applicants who passed, thirty-three percent of the African American firefighters were promoted, whereas only thirteen percent of the Caucasian firefighters were promoted. Am. Compl. ¶ 32. Although African American applicants made up twenty-eight percent of the applicants who passed the exam for Deputy Chief, they comprised fifty percent of the applicants who scored high enough to be promoted. Am. Compl. ¶ 35.

In addition, plaintiffs allege that the Fire Department allowed vacancies to go unfilled when Caucasian firefighters were in line for promotion, Am. Compl. ¶ 39, and that the "criteria

4

have been altered to favor the promotion of African American officers" from year to year, Am. Compl. ¶ 24.

Plaintiffs Lawrence Boyle and Gerald Boyle filed separate Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶¶ 44, 47. The EEOC issued right to sue letters for each plaintiff on October 18, 2016. Am. Compl. ¶¶ 44, 47.

Plaintiffs filed their initial Complaint on January 17, 2017. On June 13, 2017, the City filed a Motion to Dismiss. Plaintiffs thereafter filed an Amended Complaint on June 28, 2017, and the Court dismissed the City's Motion to Dismiss as moot. The City filed a Motion to Dismiss Plaintiffs' Amended Complaint on July 19, 2017. Plaintiffs responded on August 4, 2017. The Motion is thus ripe for review.

On October 10, 2017, The Court dismissed without prejudice all claims against Lloyd Ayers because plaintiffs failed to serve the Amended Summons and Amended Complaint on him. Plaintiffs did not attempt to serve Mr. Ayers thereafter.

## III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not

entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.*

## IV. DISCUSSION

Plaintiffs assert disparate impact and disparate treatment discrimination under Title VII and violations of §§ 1981 and 1983. The City moves to dismiss all claims against it. The Court first addresses the City's argument that Lawrence Boyle lacks standing and then considers each claim in turn.

### A. Plaintiff Lawrence Boyle has standing to bring this lawsuit.

In order for a federal court to have jurisdiction over a claim, the plaintiff must have standing under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have standing under Article III (1) a plaintiff must have "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of," i.e. "the injury must be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (citations and quotation marks omitted).

The City argues that plaintiff Lawrence Boyle lacks standing because he does not aver that he passed the exam required for promotion. Plaintiffs respond that Lawrence Boyle has standing because "the method of testing" was "so subjective that it resulted in disparate treatment." Resp. 7–8. The Court agrees with plaintiffs on this issue. Plaintiffs challenge not

only the process of promoting applicants from the pool of firefighters who passed the examination, but also the design and grading of the exam itself. Plaintiffs allege that the test "is designed, scored, and utilized with a discriminatory intent to provide advancement based upon race." Am. Comp. ¶ 16. The very reason that Lawrence Boyle did not pass the test, according to Plaintiffs' Amended Complaint, is that the test has a "discriminatory impact in favor of African-Americans and against white or Caucasian applicants." Am. Comp. ¶ 16. Lawrence Boyle's alleged injury is that he was deemed ineligible for promotion to Battalion Chief as a result of an exam allegedly designed and graded to discriminate against Caucasian firefighters. Accordingly, Lawrence Boyle has standing to bring this lawsuit.

  **B.** **The City's arguments to dismiss the Title VII claims are premature.**

The City contends that plaintiffs' disparate impact and disparate treatment claims should be dismissed because plaintiffs fail to allege sufficient "statistical evidence" to support an inference of discrimination. Mem. Supp. Mot. 1. The City also argues in the alternative that even if plaintiffs did allege a *prima facie* case of disparate impact or disparate treatment, the City has met its burden of showing that the examinations are job-related and consistent with business necessity. The Court concludes that the City's arguments are premature at this stage of the litigation.

The City argues that plaintiffs failed to allege a *prima facie* case of disparate impact and disparate treatment under Title VII. According to the City, to plead a disparate impact claim, a plaintiff must allege a specific neutral practice or policy, a significant adverse or disparate impact on persons of a particular type, and facts raising a sufficient inference of causation. Mem. Supp. Mot. 5–6. More specifically, the City asserts that plaintiffs' statistical allegations are insufficient. In support, the City points to the EEOC Guidelines, which state that a disparate

7

impact will not be inferred unless members of a particular race are selected at a rate "which is less than four-fifths . . . of the rate for the group with the highest rate." 29 C.F.R. § 1607.4(D). However, according to the City, the EEOC "four-fifths rule" is insufficient when the sample size is too small, and plaintiffs are then required to offer expert testimony on the statistical significance of their data. It is the City's position that most of plaintiffs' statistical data is insufficient to calculate whether Caucasian applicants are selected at a rate less than four-fifths the rate of African American applicants. The City also argues that even when plaintiffs do allege sufficient data from which to make a "four-fifths" calculation, the sample size is too small to support an inference of discrimination without expert testimony on statistical significance. The City repeats these arguments with respect to plaintiffs' disparate treatment claims.

The City's arguments on this issue are premature. Although the City correctly states the *prima facie* case for a Title VII disparate impact claim, plaintiffs need not establish the *prima facie* case at the pleading stage. "[T]he prima facie case under [disparate impact] analysis is an evidentiary standard—it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination . . . Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999) (quoting *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993)), *abrogated on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.").

"To survive a motion to dismiss, all that the plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII." *Ladd v. Boeing Co.*, 463 F.Supp.2d 516, 523 (E.D. Pa. 2006). "Furthermore, 'when a federal court reviews the sufficiency of a complaint . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* (quoting *Powell*, 189 F.3d at 394).

Plaintiffs identify an employment practice that allegedly creates a disparate impact and leads to disparate treatment of Caucasian firefighters. Specifically, plaintiffs allege that as a result of the design and grading of the examinations required for promotion to Battalion Chief and Deputy Chief, Caucasian firefighters were promoted at a lower rate than the rate at which African American firefighters were promoted. Am. Compl. ¶¶ 16, 35. Plaintiffs provide enough statistics in their Amended Complaint to "nudge[] their claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Because no more is required at the pleading stage, the Court denies that part of the City's Motion which seeks dismissal of plaintiffs' Title VII claims.

C. **By agreement of the parties, the Court dismisses plaintiffs' § 1981 claims.**

The City argues that plaintiffs' claims under 42 U.S.C. § 1981 should be dismissed because § 1981 "is not the proper vehicle by which employees may seek redress" against state actors. Mem. Supp. Mot. 14. "'[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733 (1989)). Plaintiffs do not oppose

the dismissal of their § 1981 claims. By agreement of the parties, the Court grants that part of the City's Motion which seeks dismissal of plaintiffs' claims under § 1981.

### D. The Court dismisses Lawrence Boyle's § 1983 claim because it is barred by the statute of limitations.

The City argues that plaintiffs' claims under 42 U.S.C. § 1983 are barred by the applicable statute of limitations. "The statute of limitations for any § 1983 claim is the forum state's limitations statute for personal injury actions." *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 631 (3d Cir. 2010). In this case, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. *See* 42 Pa. Cons. Stat. § 5524. "Though a statute of limitations defense generally cannot be raised by way of a 12(b)(6) motion, an exception known as the 'Third Circuit Rule' permits this when the statute of limitations bar is apparent on the face of the complaint." *Mumma*, 400 F. App'x at 531. Plaintiffs' rejoinder to the City's argument is that "[a]s the statute of limitations is an affirmative defense, Defendant's argument is premature." Plaintiffs do not address the City's argument that plaintiffs' failure to timely file suit is clear from the face of the Amended Complaint.

"[I]t is the standard rule that accrual [of a § 1983 claim] occurs when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotations omitted). The most recent examinations were administered in 2013 and the results were published on or about February 13, 2013. Am. Compl. ¶ 17. Plaintiff Lawrence Boyle does not aver that he passed examination in 2013. Thus, he knew or had reason to know as of February 13, 2013, that he was deemed ineligible for promotion as a result of the allegedly discriminatory examination. Plaintiffs did not file this suit until January 17, 2017. Thus, the

Court concludes that the two-year statute of limitations bars Lawrence Boyle's § 1983 claim against the City.[1]

However, the Court will not dismiss Gerald Boyle's § 1983 claim on statute of limitations grounds. The City argues that plaintiffs filed their EEOC Charges against the City in December 2013, so plaintiffs knew as early as December 2013 that their claims of discrimination had accrued. Mem. Supp. Mot. 13. This argument fails with respect to Gerald Boyle because the City has not pointed to any evidence of the fact that plaintiffs filed their EEOC charges in December 2013. Gerald Boyle's EEOC Charge, attached to the Complaint as Exhibit B, does not contain a date on which the Charge was filed.[2] Furthermore, the date on which Gerald Boyle filed his EEOC Charge is not necessarily the date upon which his § 1983 claim accrued. In his EEOC Charge, Gerald Boyle checked the box for "continuing violations." Compl. Ex. B. Results of the exams remained in effect for two years. Am. Comp. ¶ 12. Therefore, Gerald Boyle might not have known that he would not be promoted until his exam score expired in February of 2015. If his claim accrued at that time, his § 1983 claim would be timely. Because

---

[1] Although not briefed by the parties, the Court addresses the question of whether the statute of limitations was tolled by Lawrence Boyle's filing of an EEOC Charge. A federal court must apply state law in ascertaining whether a state statute of limitations has been tolled. *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 45 (3d Cir. 1990). Although the Pennsylvania Supreme Court has not decided this question, this Court agrees with *Mincin v. Shaw Packing Co.*, 989 F.Supp. 710, 719 (W.D. Pa. 1997), in which Judge D. Brooks Smith, a district court judge at the time, now Chief Judge of the Court Appeals for the Third Circuit, predicted that "the Pennsylvania Supreme Court would not toll the statute of limitations for related state tort claims because of the pendency of a discrimination charge before the PHRC/EEOC."

[2] Plaintiffs attached to their Complaint Lawrence Boyle's EEOC Charge as Exhibit A and Gerald Boyle's EEOC Charge as Exhibit B. Plaintiffs, in their Amended Complaint, cite these documents as Exhibits A and B, but the exhibits were not attached to the copy of the Amended Complaint filed with the Court. Because this Court may consider "undisputedly authentic documents if the complainant's claims are based upon these documents" in deciding a motion to dismiss, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), the Court concludes that the documents attached to the original Complaint are properly before the Court in deciding the City's Motion to Dismiss the Amended Complaint.

the statute of limitations defense is not apparent from the face of the Amended Complaint, the Court does not dismiss Gerald Boyle's claim as time barred on the present state of the record, and now considers the sufficiency of that claim.

### E. Gerald Boyle pleaded a proper § 1983 claim under *Monell*.

In addition to its challenge based on the statute of limitations, the City presents two reasons why the Court should dismiss plaintiffs' §1983 claims. First, the City contends that plaintiffs fail to allege that the discriminatory action was taken pursuant to a custom or policy of the City as required by *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Second, the City argues that plaintiffs failed to allege a violation of the Equal Protection Clause of the Fourteenth of Amendment of the United States Constitution. The Court addresses each argument in turn.

To state a claim under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). To establish municipal liability under § 1983, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy or custom. *Id.* at 694. "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 690).

The Court concludes that Gerald Boyle properly pleaded a custom or policy under *Monell*. Plaintiffs allege that the exam "is designed, scored, and utilized with a discriminatory intent to provide advancement based upon race." Am. Compl. ¶ 16. Specifically, plaintiffs aver that the exam process "was designed as part of a consent decree intended to increase the success of black applicants." Am. Compl. ¶ 34. According to plaintiffs, although the consent decree had been lifted, the City continued to use a system designed to increase the success of African American applicants. Am. Compl. ¶ 34. Furthermore, plaintiffs allege that the examination grading and promotion criteria were subjective, which enabled the Fire Department to make promotions based on the race of the applicant. Am. Compl. ¶ 23, 24, 37. The exam score counted for ninety percent of a firefighter's final score, and promotions were determined solely based on a firefighter's final score. Am. Compl. ¶¶ 14, 15. Although plaintiff's allegations regarding the design and scoring of the exam are conclusory standing alone, when combined with the statistical data provided by plaintiffs, the allegations are sufficient to state a claim under *Monell*.

The Court next addresses the City's challenge that plaintiffs failed to state a constitutional deprivation. Specifically, the City argues that plaintiffs failed to assert they were denied Equal Protection because they failed to identify similarly situated individuals who were treated differently from them.

"To state a section 1983 equal protection claim a plaintiff must allege that (1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals." *Suber v. Guinta*, 902 F.Supp.2d 591, 606 (E.D. Pa. 2012) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). To avoid dismissal, a plaintiff must allege that he is a member of a protected class and that similarly situated non-class

13

members were treated differently. *D'Altilio v. Dover Twp.*, Civ. No. 1:06-1931, 2007 WL 2845073, at *8 (M.D. Pa. Sept. 26, 2007) (citing *Keenan*, 983 F.2d at 465). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Plaintiffs are not required to identify in their complaint specific instances in which others have been treated differently. *Tomino v. City of Bethlehem*, Civ. No. 08-06018, 2010 WL 1348536, at *14 (E.D. Pa. March 31, 2010) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). Rather, a general allegation that plaintiffs have been treated differently from others similarly situated will suffice. *Tomino*, 2010 WL 1348536, at *14.

Gerald Boyle alleges that he was discriminated against because he is Caucasian. Classifications based on race are suspect under the Equal Protection Clause of the Fourteenth Amendment. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). Gerald Boyle alleges in the Amended Complaint that he was treated differently from non-white firefighters. Specifically, he avers that the exam for promotion to Deputy Chief was designed and graded to favor African American firefighters. Am. Compl. ¶ 16. Taking the factual averments in the Amended Complaint as true and drawing all reasonable inferences in favor of plaintiffs, the Court concludes that Gerald Boyle sufficiently alleges that African American firefighters and Caucasian firefighters were treated differently. He states that exams were designed and scored in a way that favors African American applicants, and, based on this allegation, he claims he was denied a promotion because of his race. Am. Comp. ¶¶ 20, 24. At this stage of the litigation, Gerald Boyle sufficiently alleges that he was denied Equal Protection. Because the Court concludes that Gerald Boyle properly pleaded a

14

§ 1983 claim under *Monell*, that part of the City's Motion which seeks to dismiss Gerald Boyle's § 1983 claim is denied.

V.    CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is granted in part and denied in part. The Court denies that part of the City's Motion seeking to dismiss all claims by Lawrence Boyle on standing grounds without prejudice to the City's right to raise the issues presented in the Motion after the completion of discovery by motion for summary judgment and/or at trial. The Court also denies that part of the City's Motion seeking to dismiss plaintiffs' Title VII claims without prejudice to the City's right to raise the issues presented in the Motion after the completion of discovery by motion for summary judgment and/or at trial. By agreement of the parties, the Court grants that part of the City's Motion seeking to dismiss plaintiffs' § 1981 claims with prejudice. The Court also grants that part of the City's Motion seeking to dismiss Lawrence Boyle's § 1983 claim with prejudice on the ground that the claim is barred by the applicable statute of limitations. Finally, that part of the City's Motion seeking to dismiss Gerald Boyle's § 1983 claim is denied without prejudice to the City's right to raise the issues presented in the Motion after the completion of discovery by motion for summary judgment and/or at trial.

The remaining claims in this case are (1) Gerald Boyle and Lawrence Boyle's disparate impact and disparate treatment claims under Title VII and (2) Gerald Boyle's claim under 42 U.S.C. § 1983. An appropriate order follows.