IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAWRENCE BOYLE and GERALD BOYLE,** | **CIVIL ACTION** |
| Plaintiffs, | |
| v. | |
| **CITY OF PHILADELPHIA, its Officials, Agents, Employees and Assigns,** | **NO. 17-262** |
| Defendant. | |

DuBois, J.                                                                                                       August 4, 2020

**M E M O R A N D U M**

### I.   INTRODUCTION

This is an employment discrimination case, in which plaintiffs Lawrence Boyle and Gerald Boyle allege assert claims of discrimination under 42 U.S.C. §§ 2000(e), *et seq.* ("Title VII") and 42 U.S.C. § 1983 against the City of Philadelphia.  Lawrence Boyle and Gerald Boyle, both Caucasian males, claim that they were unlawfully denied promotions and opportunities for promotions in the Philadelphia Fire Department because of their race.  Presently before the Court is the City's Motion for Summary Judgment.  For the reasons that follow, the Motion is granted.

### II.   BACKGROUND[1]

Plaintiffs, Lawrence Boyle and Gerald Boyle, are employees of the Philadelphia Fire Department.  Def.'s Statement Undisputed Material Facts ("Def.'s SUMF") ¶ 1.  Lawrence Boyle is a Caucasian male who holds the rank of Fire Captain in the Philadelphia Fire Department.  Pls.' Counterstatement Material Facts ("Pl.'s CMF") ¶ 2; Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. C 13:11-17.  Gerald Boyle is a Caucasian male who holds the rank of Battalion Chief in the Philadelphia Fire Department.  Pl.'s CMF ¶ 3; Def.'s Mot. Ex. B 10:22-

---

[1] The facts are presented in the light most favorable to plaintiffs.  Disputed facts are noted as such. Where appropriate, plaintiffs and the City's statements of material facts are cited in lieu of a direct citation to the record.

11:5.

### A. Promotional Exams

In order to qualify for promotions in the Philadelphia Fire Department, employees must pass an exam. Def.'s SUMF ¶ 2. Passing the exam, however, does not guarantee promotion. *Id.* ¶ 3. Rather, a candidate is ranked on a "promotional" or eligibility list according to a composite score calculated based on the candidate's exam performance and seniority within the Fire Department. *Id.* ¶ 11.

Gerald Boyle took exams administered in 2007, 2010, and 2013 for promotion to the position of Deputy Chief ("the Deputy Chief exams"). Def.'s SUMF ¶ 6. Lawrence Boyle took exams administered in 2007 and 2010 for promotion to the position of Battalion Chief ("the Battalion Chief exams"). Def.'s SUMF ¶ 5; Def.'s Mot. Ex. C 14:1-2. The parties dispute whether Lawrence Boyle took the 2013 Battalion Chief exam. Def.'s Mot. 9; Opp'n Def.'s Mot. 4. Lawrence Boyle testified that he completed the exam but was never provided with his grade. Def.'s Mot. Ex. C 14:1-23. However, there are no records that Lawrence Boyle applied for or took the 2013 Battalion Chief exam, *id.* Ex. G 50:23-51:5, and the promotional list based on that exam does not make reference to Lawrence Boyle, *id.* Ex. F.

The Deputy Chief and Battalion Chief exams are administered orally and consist of two questions: one testing supervisory knowledge and the other testing technical knowledge. Def.'s Mot. Ex. G 13:24-14:8, 16:23-17:3. The exams are administered and graded by a two-person panel made up of officials from fire departments from around the country. *Id.* at 15:12-17, 16:12-15, 17:4-14. For both questions, 80 percent of the grade a candidate receives is based on the candidate's knowledge and 20 percent is based on his or her communication skills. *Id.* at 17:19-18:2.

At the beginning of the examination process, each candidate is assigned a "candidate ID number." *Id.* at 40:4-9.  Exams are voice-recorded and the candidate is identified only by the candidate ID number. *Id.* at 39:21-24.  The records of the candidate ID numbers assigned as part of the relevant exams in this case were retained for five years in accordance with the City's record retention policy. *Id.* at 40:10-41:4.

Evidence of exam results have only been produced for the 2013 Battalion Chief and Deputy Chief exams, as follows[2]:

- Deputy Chief Exam: Of the 25 candidates who took the 2013 Deputy Chief exam, 24 passed—including Gerald Boyle.  Def.'s Mot. Ex. E.  Of the 24 candidates who passed, seven were African American and sixteen were Caucasian. *Id.*  Six Caucasian candidates and four African American candidates were promoted from the promotional list generated from the 2013 Deputy Chief exam. *Id.*  Gerald Boyle was not promoted. *Id.* Ex. B 14:5-15:10; Pl.'s CMF ¶ 14.

- Battalion Chief Exam: Of the 44 candidates who took the 2013 Battalion Chief exam, 37 passed.  Of the 37 candidates who passed, ten were African American and 27 were Caucasian. *Id.* Ex. F.  Nineteen Caucasian candidates and seven African American candidates were promoted from the list. *Id.*

---

[2] In their response to the City's Motion and Counterstatement of Undisputed Material Facts, plaintiffs reiterate allegations made in their Amended Complaint regarding disparate passage and promotion rates between African American and Caucasian candidates who took the 2007 and 2010 exams for Battalion Chief and Deputy Chief. Opp'n Def.'s Mot. 4-5; Pl.'s CMF ¶¶ 11-12, 14, 16.  It is well-settled that the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but instead "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  These alleged promotion rates mirror the statistics that were attached to Lawrence Boyle's Charge of Discrimination, which he testified were compiled by his union. Def.'s Mot. Ex. C, 17:21-18:4.  However, the statements in plaintiff's EEOC charge are mere allegations and do not support his claims in opposing the Motion for Summary Judgment.  *See e.g., Bernstein v. Georgia Dept. of Educ.*, 970 F. Supp. 2d 1340, 1362 (N.D. Ga. 2013) (refusing to consider allegations contained in the plaintiff's EEOC charge and complaint when ruling on summary judgment).

### B. Procedural Background

Plaintiffs filed separate Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Pl.'s CMF ¶ 23. The EEOC issued a Notice of Right to Sue to plaintiffs on October 18, 2016. Def.'s SUMF ¶ 18; Def.'s Mot. Ex. I.[3]

Plaintiffs filed their initial Complaint on January 17, 2017. On June 28, 2017, plaintiffs filed an Amended Complaint. The Amended Complaint asserted claims of discrimination under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 against the City of Philadelphia and Lloyd Ayers, former Acting Fire Commissioner. Plaintiffs alleged that the oral exams were designed, scored, and utilized to favor African American applicants. Am. Compl. ¶ 16.

The City filed a Motion to Dismiss Plaintiffs' Amended Complaint on July 19, 2017. On October 10, 2017, the Court dismissed without prejudice all claims against Lloyd Ayers because plaintiffs failed to serve the Amended Complaint on him. Plaintiffs did not attempt to serve Mr. Ayers thereafter.

On February 16, 2018, the Court issued a Memorandum and Order granting in part and denying in part the City's Motion to Dismiss. By agreement of the parties, the Court granted that part of the City's Motion seeking to dismiss plaintiffs' § 1981 claims with prejudice. The Court also granted that part of the Motion seeking to dismiss Lawrence Boyle's § 1983 claim with prejudice on the ground that the claim was barred by the applicable statute of limitations. The remaining claims are (1) Gerald Boyle and Lawrence Boyle's disparate impact and disparate treatment claims under Title VII and (2) Gerald Boyle's claim under § 1983.

On May 24, 2019, the City filed a Motion for Summary Judgment (Document No. 25).

---

[3] The record contains evidence only of Lawrence Boyle's EEOC Charge and the Notice of Right to Sue issued to him by the EEOC on October 18, 2016. Def.'s Mot. Exs. H, I. However, the City asserts that such a Notice was sent to both plaintiffs on the same date. Def.'s SUMF ¶ 18.

Plaintiffs responded on June 29, 2019 (Document No. 27). The City filed a Reply on July 12, 2019. The Motion is thus ripe for decision.

### III.    LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a mere "scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* at 252. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (internal citations omitted). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

### IV.    DISCUSSION

Lawrence and Gerald Boyle assert claims of disparate impact and disparate treatment under Title VII (Count I) and Gerald Boyle asserts a claim of municipal liability under § 1983 (Count III). In its Motion for Summary Judgment, the City argues: (1) Lawrence Boyle lacks standing absent evidence that he took the 2013 Battalion Chief exam; (2) plaintiffs cannot

establish disparate impact because there is insufficient statistical evidence to support the claim; (3) plaintiffs have provided no evidence of disparate treatment; and (4) Gerald Boyle's *Monell* claim fails as a matter of law and, in addition, it is barred by the statute of limitations. Def.'s Mot. 1-2, 12-13. The Court addresses each argument in turn.

### A. Lawrence Boyle's Standing

The City argues that Lawrence Boyle lacks standing because the "record is devoid of any information suggesting that Plaintiff Lawrence Boyle even took the 2013 Battalion Chief exam." Def.'s Mot. 9. In response, plaintiffs cite the City's Answer to the Amended Complaint, in which the City admits the allegation that Lawrence Boyle took the 2013 Battalion Chief exam. Opp'n Def.'s Mot. 4 (citing Answer ¶ 29). Because the City admitted in its Answer that Lawrence Boyle took the 2013 exam, it cannot contradict that admission in arguing for summary judgment. *See, e.g.*, *Ward v. Allied Mech. & Elec.*, No. 4:09-CV-1579, 2010 WL 4180737, at *3 (M.D. Pa. Oct. 20, 2010) (holding that, at the summary judgment stage, a defendant is "precluded" from arguing contrary to an admission in its answer); *CIT Grp./Equip. Fin., Inc. v. Rosenblum*, No. 90–1117, 1990 WL 191911, at *5 (D.N.J. Nov. 19, 1990) (holding that an admission in an answer cannot be "contradicted for the purpose of opposing a summary judgment motion"). The Court thus rejects the City's argument that Lawrence Boyle lacks standing because he has not established that he took the 2013 Battalion Chief exam.

### B. Disparate Impact under Title VII

Plaintiffs allege that the employment practices of the City have a "disparate and adverse impact on White Firefighters." Am. Compl. ¶ 58. In particular, plaintiffs contend that the City's promotional exams are "designed, scored, and utilized with a discriminatory intent to provide advancement based upon race" and "have a discriminatory impact in favor of African-Americans

and against white or Caucasian applicants." *Id.* ¶ 16.  In support of these allegations, plaintiffs cite the results of the 2013 Battalion Chief and calculate that 90.9 percent of African American candidates passed the exam whereas only 78.7 percent of Caucasian candidates passed the exam. Opp'n Def.'s Mot. 9.  Plaintiffs also cite the results of the 2013 Deputy Chief exam, noting that the top three candidates were African American while only one Caucasian candidate was among the top six candidates.  *Id.*[4]  Finally, plaintiffs point out that, between the 2013 Deputy Chief exam and the 2013 Battalion Chief exam, seven of the eight candidates who failed the exams were Caucasian.  *Id.*  In its Motion for Summary Judgment, the City argues that plaintiffs cannot establish a *prima facie* case of disparate impact because "the statistical evidence they rely on is insufficient." Def.'s Mot. 6.  The Court agrees with the City on this issue.

"Disparate-impact litigation proceeds in three steps." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).  First, a plaintiff must establish a *prima facie* case of disparate impact discrimination by demonstrating "that application of a facially neutral standard has resulted in a significantly discriminatory . . . pattern." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir. 1991).  Second, an "employer may defend against a *prima facie* showing of disparate impact only by demonstrating that the challenged practice is 'job related for the position in question and consistent with business necessity.'" *N. Hudson*, 665 F.3d at 477 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).  Third, "a plaintiff can overcome an employer's business-necessity defense by showing that alternative practices would have less discriminatory effects while ensuring that candidates are duly qualified." *Id.*

"[T]o establish a *prima facie* case of disparate impact in a Title VII case, a plaintiff must (1) identify a specific employment policy or practice of the employer and (2) proffer evidence,

---

[4] Oddly, plaintiffs contend that, even though only 24 firefighters passed the 2013 Deputy Chief exam, "23 to 35" African American candidates were promoted.  Opp'n Def.'s Mot. 4-5.

typically statistical evidence, (3) of a kind and degree sufficient to show that the practice in question has caused exclusion of applicants for jobs or promotions (4) because of their membership in a protected group." *Stagi v. Nat'l R.R. Passenger Corp.*, 391 F. App'x 133, 140 (3d Cir. 2010).  If statistical evidence is used, the Third Circuit has stated that the plaintiff must "demonstrate that the disparity in impact is sufficiently large that it is highly unlikely to have occurred at random." *Id.* at 137.  Usually this burden is satisfied "by the use of tests of statistical significance, which determine the probability of the observed disparity obtaining by chance." *Id.*; *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1223 (10th Cir. 2013) ("It is not enough for a plaintiff to present data showing a disparity between groups. To be reliable, the result also must be statistically significant."); *Luceus v. R.I.*, No. 15-489, 2018 WL 1626263, at *6 (D.R.I. Mar. 30, 2018) ("There are cases, to be sure, where courts have excused a plaintiff's failure to provide statistical analysis.  But these are few, far between, and only where the raw numbers evince the most egregious disparities.").

There are two standard approaches to analyzing statistical significance in disparate impact cases recognized by the Third Circuit: (1) calculation of probability levels and standard deviation and (2) application of the "four-fifths" or "80 percent" rule.  With regard to the first approach, the Third Circuit has affirmed that "a finding of statistical significance with a probability level at or below 0.05, or at 2 to 3 standard deviations or greater, will typically be sufficient" to establish statistical significance.  *Stagi*, 391 F. App'x at 140.  The second approach, the four-fifths rule, is drawn from the EEOC's Uniform Guidelines on Employee Selection Procedures.  29 C.F.R. § 1607.4(D).  Under this analysis, a court considers whether the "selection rate for any race, sex, or ethnic group" is "less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate."  *Id.*  However, this rule has "come under

substantial criticism" and has been relegated to "a rule of thumb for the courts." *Stagi*, 391 F. App'x at 138-39 (quoting *Watson*, 487 U.S. at 995 n.3).  Moreover, the four-fifths rule is not favored in cases presenting small sample sizes.  *See* 29 C.F.R. § 1607.4(D) ("[g]reater differences in selection rate may not constitute adverse impact where the differences are based on small numbers."); *see, e.g.*, *Stout v. Potter*, 276 F.3d 1118, 1123 (9th Cir. 2002) ("A sample involving 6 female applicants in a pool of 38 applicants is likely too small to produce statistically significant results.").

      Plaintiffs offer no analysis of statistical significance whatsoever with regard to the record evidence of exam results and promotions.  That failure alone is enough to grant the City's Motion on plaintiffs' disparate impact claim.  *See McAvoy v. Nissan N. America, Inc.*, No. 15-6824, 2018 WL 3159879, at *8 (D.N.J. Jan. 16, 2018) ("When a plaintiff has failed to provide any comparative [statistical] analysis, the Third Circuit has affirmed summary judgment against the plaintiff.").  The Court nonetheless notes that application of the "rule of thumb" four-fifths rule in this case largely reveals no disparate impact and is inappropriate in light of the small sample sizes.  *Watson*, 487 U.S. at 995 n.3.  For example, 90.9 percent of African American candidates passed the 2013 Battalion Chief exam, whereas 78.7 percent of Caucasian candidates passed the exam.  Opp'n Def.'s Mot. 9.  Thus, the pass rate for Caucasian candidates was 86.5 percent of the pass rate of African American candidates—over the 80 percent threshold.  Further, 100 percent of African American candidates passed the 2013 Deputy Chief exam, whereas 94 percent of Caucasian applicants passed.  Def.'s Mot. Ex. E.  Therefore, the pass rate for Caucasian candidates was 94 percent of the pass rate of African American candidates—also over the 80 percent threshold.

      Turning to promotion rates, the Court finds that the statistical comparison between the

number of African American candidates who were promoted from the 2013 Deputy Chief promotional list as compared to Caucasian candidates does satisfy the four-fifths rule, but that application of the rule is inappropriate in light of the small sample size.[5]  Def.'s Mot. Ex. E.  As courts have held, "[w]here the size of the sample is small, . . . the 'four-fifths rule' is not an accurate test of discriminatory impact." *Fudge v. City of Providence Fire Dept.*, 766 F.2d 650, 658 n.10 (1st Cir. 1985).  The EEOC has specifically warned that disparate impact liability is not appropriate "where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group."  44 Fed. Reg. 11,996, 11999 (March 2, 1979).  In this case, 57 percent of African American candidates who passed the exam were hired from the promotional list as compared to 37.5 percent of Caucasian candidates.  Def.'s Mot. Ex. E.  Accordingly, the promotion rate for Caucasian candidates was 65.7 percent of the promotion rate for African American candidates.  However, given the small sample size, if one more Caucasian candidate had been promoted instead of an African American candidate, the promotion rate for Caucasian candidates would have exceeded that of African American candidates.[6]  The Court thus concludes that the sample size is too small to produce statistically significant results when analyzed under the four-fifths rule.

For this same reason, plaintiffs' argument based on a comparison of the failure rates between Caucasian and African American candidates is also insufficient to establish a *prima*

---

[5] The Court does not conduct this analysis with regard to the 2013 Battalion Chief exam, because a review of the results and subsequent promotions reveals that an equal percentage—70 percent—of African American and Caucasian candidates who passed the exam were promoted.  Def.'s Mot. Ex. F.

[6] Based on the record evidence of promotions from the 2013 Deputy Chief eligibility list, an additional promotion of a single Caucasian candidate instead of an African American candidate would have resulted in a promotion rate of 43.75 percent for Caucasian candidates as compared to 42.85 percent for African American candidates.  Def.'s Mot. Ex. E.

*facie* case of disparate impact.  *See* Opp'n Def.'s Mot. 9.  Courts have rejected such comparisons where the sample size of failed candidates is "extremely small."  *Teasdale v. City of New York*, 2013 WL 5300699, at *9 (E.D.N.Y. Sept. 18, 2013).  In this case, considering the 2013 Deputy Chief and Battalion Chief exam results together, plaintiffs have a sample size of eight total failing candidates—too small to reliably demonstrate disparate impact and support plaintiffs' *prima facie* case.

Plaintiffs' final argument that disparate impact is demonstrated by the ranking of African American candidates higher on the eligibility list than Caucasian candidates is also unavailing.  *See* Opp'n Def.'s Mot. 3.  Evidence of "bunching" of candidates at the top of a range of scores has been recognized as sufficiently supportive of a *prima facie* case of disparate impact when it is accompanied by statistical analysis that demonstrates that the bunching "could not be expected to occur by chance."  *Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d 1140, 1148 (2d Cir. 1991).  Plaintiffs have provided no such statistical analysis in this case.

With respect to passage and promotion rates between 2007 and 2010, plaintiffs merely reiterate allegations from their Amended Complaint and EEOC charges.  As discussed *supra*, these alleged numbers lack support in the record.  It is well-settled that the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but instead "must set forth specific facts showing that there is a genuine issue for trial."  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  By failing to demonstrate the statistical significance of the exam results and promotions that are reflected in the record, plaintiffs have failed to establish their *prima facie* case of disparate impact.  *See Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1453 (D.C. Cir. 1988) ("[T]he statistics must be made meaningful to the finder of fact in order to permit the plaintiffs to carry their burden of showing that their statistics

are significant."). Put simply, plaintiffs have failed to provide evidence "of a kind and degree sufficient" to show that exam "caused exclusion of applicants for jobs or promotions . . . because of their membership in a protected group." *Stagi*, 391 F. App'x at 140.

For all of the foregoing reasons, the City's Motion for Summary Judgement is granted with respect to plaintiffs' claim of disparate impact under Title VII.[7]

### C. Disparate Treatment Under Title VII

In its Motion, the City argues that plaintiffs have "failed to provide a single example of hostile or disparate treatment on the basis of race." Def.'s Mot. 11. The City points out that "both Plaintiffs testified at their respective depositions that they have not been targeted with differential treatment on the basis of race." *Id.* In response to the City's Motion, plaintiffs fail to meaningfully address these arguments other than to broadly allege that "[t]he design and grading of the examinations for promotion to Battalion Chief and Deputy Chief . . . led to disparate treatment of Caucasian firefighters." Opp'n Def.'s Mot. 9. The Court agrees with the City on this issue.

"A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *O'Brien v. City of Phila.*, 837 F. Supp. 692,

---

[7] Plaintiffs argue in their response to the City's Motion that the City should be precluded "from asserting their legitimate non-discriminatory reason for Plaintiffs not being promoted" as a sanction for spoliation of key evidence. Opp'n Def.'s Mot. 10. Specifically, plaintiffs claim that the records of candidate ID numbers were destroyed by the City, thereby preventing plaintiffs from having the exams "re-scored by another party." *Id.* First, because plaintiffs have failed to establish a *prima facie* case of disparate impact, the burden of providing a business necessity defense does not shift to the City. Second, the Court notes that the records were destroyed pursuant to the City's five year retention policy. The Third Circuit has held that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). "[A] finding of bad faith is pivotal to a spoliation determination." *Bull*, 665 F.3d at 79. Spoliation does not occur where "the destruction was a matter of routine with no fraudulent intent." *Id.* Plaintiffs fail to show that the documents, including the candidate ID numbers, were destroyed in bad faith rather than as a matter of routine. *See Culler v. Shinseki*, No. 09-305, 2011 WL 3795009, at *7 (M.D. Pa. Aug. 26, 2011).

697 (E.D. Pa. Nov. 22, 1993). Disparate treatment claims under Title VII are "considered under one of two analyses": (1) the pretext theory of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) and (2) the mixed-motive theory of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *modified on other grounds by* the Civil Rights Act of 1991. *Pellegrino v. McMillen Lumber Products Corp.*, 16 F. Supp. 2d 574, 579 (W.D. Pa. 1996). At this stage of the litigation, plaintiff need not select which of the two theories to pursue. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 (3d Cir. 1995) (permitting an employee to present his case under both theories at trial, provided that the court "decide whether one or both theories properly apply" prior to instructing the jury). The Court thus addresses each theory in turn.

    1. *Pretext Theory*

Under the pretext theory of disparate treatment, plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). To satisfy the fourth element, plaintiffs may show that "nonmembers of the protected class were treated more favorably." *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 319 (3d Cir. 2000). If the "plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Finally, "should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

The Court concludes that plaintiffs have failed to establish a *prima facie* case of disparate treatment under a pretext theory. Plaintiffs' primary evidence of disparate treatment is the passage and promotion rates from the 2013 Battalion and Deputy Chief exams. However, "[w]hile statistical evidence may be used to support a plaintiff's claim of disparate treatment under either a mixed motives or pretext analysis, such evidence does not 'directly reflect' a discriminatory attitude." *Finch v. Hercules Inc.*, 865 F. Supp. 1104, 1126 n.24 (D. Del. 1994) (citations omitted). Moreover, "in individual disparate treatment cases . . . statistical evidence is less significant because the ultimate issue is whether the particular plaintiff was the victim of an illegitimately motivated employment decision." *Castillo v. Am. Bd. of Surgery*, 221 F. Supp. 2d 564, 569 (E.D. Pa. 2002) (quoting *Krodel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984), *cert. denied*, 474 U.S. 817, (1985)). As such, statistical evidence is "ordinarily not dispositive" of a disparate treatment claim. *Id.* (quoting *Krodel*, 748 F.2d at 710). As discussed in the context of plaintiffs' disparate impact claims, plaintiffs have failed to demonstrate the statistical significance of the data in the record. Accordingly, this evidence is insufficient to demonstrate a *prima facie* case of disparate treatment. *See id.*

Plaintiffs have provided no other evidence of disparate treatment. Lawrence Boyle testified that he had not been targeted by a coworker or supervisor with race-related comments. Def.'s Mot. Ex. C 20:17-21. When asked if he "ever personally felt that [his] working environment is hostile on the basis of race," he answered only that he had encountered "hostilities" when going into "some old neighborhoods" and identified no such hostilities within the Philadelphia Fire Department. *Id.* at 20: 10-15. When Gerald Boyle was asked whether he had been "targeted with hostile treatment on the basis of your race," he answered only that "it's my position that I've done an impeccable job with outstanding performance evaluations" and

14

that "I'm being excluded from promotion." *Id.* Ex. B 18:8-18.  When asked for an example of the City's claimed bias against promoting Caucasian firefighters, Gerald Boyle testified that, in 2017, when he was next in line for a promotion on an eligibility list for the position of Assistant Chief, the City decided to start the testing process and generate a new list two weeks early.  *Id.* at 16:2-24.  However, Boyle has not provided the Court with the 2017 promotional list and does not state in his deposition whether any of the candidates promoted ahead of him were African American or Caucasian.  As a result, there is no evidence that nonmembers of the protected class were treated more favorably.  *See Goosby*, 228 F.3d at 319.

Critically, when considering claims of disparate treatment based on promotional exams, courts have focused on whether "candidates were treated more favorably . . . during the performance examination."  *Spence v. City of Phila.*, No. 03-3051, 2004 WL 1576631, at *4-6 (E.D. Pa. July 1, 2004) (granting summary judgment in part because plaintiff failed to show that nonmember applicants were "tested under conditions any different than his own").  No such evidence has been offered by plaintiffs in this case.

For all of the foregoing reasons, the Court concludes that plaintiffs' claim of disparate treatment under the pretext theory fails.[8]

    2. *Mixed-Motive Theory*

In a mixed-motive case, a plaintiff alleges that "both legitimate and illegitimate reasons motivated" the employment decision.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003).  To prove disparate treatment under the mixed-motive theory, the plaintiff "must demonstrate—using

---

[8] Because plaintiffs fail to establish a *prima facie* case of disparate treatment under the pretext theory, the burden does not shift to the City to articulate a "legitimate, nondiscriminatory reason for the employee's rejection." *Jones*, 198 F.3d at 410.  Accordingly, as discussed in the context of plaintiffs' disparate impact claim, the Court need not consider plaintiffs' argument that the City should be precluded "from asserting their legitimate non-discriminatory reason for Plaintiffs not being promoted" as a sanction for spoliation of evidence.  Opp'n Def.'s Mot. 10.

direct or circumstantial evidence—that race was a motivating factor in the City's failure to promote" him. *Pierce v. City of Phila.*, No. CV 17-05539, 2018 WL 6832093, at *8 (E.D. Pa. Dec. 28, 2018). If the plaintiff meets that burden, the defendant must show it "would have taken the same action in the absence of the impermissible motivating factor." *Id.* (quoting 42 U.S.C. § 2000e-5(g)(2)(B)).

Plaintiffs' statistical evidence is insufficient to support their disparate treatment claims under the mixed-motive theory. Indeed, courts have held that "statistical proof alone cannot establish the existence of a mixed motive case." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1469 n. 17 (6th Cir. 1990), *cert. denied*, 498 U.S. 878 (1990). Plaintiffs fail to set forth any other evidence demonstrating that race was a motivating factor in the City's failure to promote plaintiffs. Accordingly, the Court concludes that plaintiffs' claim of disparate treatment under the mixed-motive theory fails.[9]

### 3. Conclusion

For all of the foregoing reasons, the Court grants the City's Motion with respect to plaintiffs' disparate treatment claims under Title VII.

### D. Gerald Boyle's *Monell* Claim

Gerald Boyle asserts a *Monell* claim based on the denial of Equal Protection through an alleged custom or policy by which exams were "designed, scored, and utilized with a discriminatory intent to provide advancement based upon race." Am. Compl. ¶ 16; *see Boyle v. City of Phila.*, No. 17-262, 2018 WL 994218, at *6-7 (E.D. Pa. Feb. 20, 2018) (DuBois, J.) (holding that, despite Gerald Boyle's failure to expressly allege in the Amended Complaint a

---

[9] Because plaintiffs fail to demonstrate disparate treatment under the mixed-motive theory, the burden does not shift to the City to show it "would have taken the same action in the absence of the impermissible motivating factor." *Pierce*, 2018 WL 6832093 at *8. The Court thus need not consider plaintiffs' argument that the City should be precluded from asserting such a defense as a sanction for spoliation of evidence. Opp'n Def.'s Mot. 10.

custom or policy in support of his *Monell* claim, he had properly pled a *Monell* claim based on his allegations regarding the discriminatory design and use of promotional exams against Caucasian candidates). In its Motion for Summary Judgment, the City argues that "the record is devoid of any allegation suggesting a policy or custom that would establish liability for a municipal entity under § 1983." Def.'s Mot. 14. According to the City, the record does not support an underlying violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 14-15. Plaintiffs argue in response that "the policies governing administration and grading of the exams as well as allowing vacancies to go unfilled when white firefighters are next in line violates Gerald Boyle's constitutional rights." Opp'n Def.'s Mot. 14. Plaintiffs contend that Gerald Boyle's Equal Protection claim is supported by the fact that "the examination was subjective, which enabled the City to make promotions based upon race" and the City "demonstrated a bias against promoting white firefighters" by allowing "vacancies to go unfilled when white firefighters were next in line." *Id.* at 15. The Court agrees with the City on this issue.

To establish *Monell* liability, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A policy is established when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). In contrast, a custom can be established by showing that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Critically, "a municipality cannot be found liable on a *Monell* claim where there has been no underlying violation of rights." *Johnson v. City of Phila.*, 105

F.Supp.3d 474, 482 (E.D. Pa. April 30, 2015).

The Court concludes that plaintiffs fail to establish an underlying constitutional violation in support of Gerald Boyle's *Monell* claim. To establish an Equal Protection claim, a plaintiff must show "intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Hemdal v. Schuylkill Valley Sch. Dist.*, No. 12-5925, 2014 WL 12607752, at *3 n.21 (E.D. Pa. Feb. 20, 2014) (quoting *Huebschen v. Dep't of Health & Social Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983)).

First, the evidence that Gerald Boyle was denied Equal Protection when a new eligibility list was created before expiration of the then-current list is not enough, standing alone, to support his claim. Absent any evidence that other individuals on the eligibility list were nonmembers of the protected class, Gerald Boyle has not shown intentional discrimination "because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Hemdal*, 2014 WL 12607752, at *3 n.21; *see also Charles v. Baesler*, 910 F.2d 1349, 1357 (6th Cir. 1990) ("[Plaintiff] may be correct in arguing that the government and its officials in fact singled him out due to their sloppy administration of the contractual promotion system . . . Such negligence is a far cry, however, from intentional invidious discrimination."). Courts in this Circuit have held that the mere promotion of higher-ranked candidates cannot constitute a violation of the Equal Protection Clause. *Hernandez v. Borough of Ft. Lee*, 2010 WL 2346646, at *6 (D.N.J. June 8, 2010).

Second, while statistics may be sufficient to support an Equal Protection claim, courts have held that "to show discriminatory intent . . . based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis v. New York City*

*Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015). As discussed in the context of plaintiffs' disparate impact claims, plaintiffs have failed to demonstrate that the proffered statistics are "statistically significant," *id.*, and therefore those statistics cannot alone support an Equal Protection claim.

Finally, courts have rejected alleged Equal Protection violations based on an employer's "reliance on various subjective criteria during the promotional process." *Baldwin v. Gramiccioni*, No. 16-1675, 2019 WL 2281580, at*16 (D.N.J. May 29, 2019). Indeed, courts have held that "[s]ubjective promotion criteria are not discriminatory *per se*." *Beckett v. Dep't of Corrections*, 981 F. Supp. 319, 327 (D. Del. 1997) (citing *Shealy v. City of Albany*, 89 F.3d 804, 805 (11th Cir. 1996)).

For all of the foregoing reasons, the Court grants the City's Motion with respect to Gerald Boyle's § 1983 claim.[10]

## V. CONCLUSION

For the foregoing reasons, the Court grants the City's Motion for Summary Judgment. Judgment is entered in favor of defendant, the City of Philadelphia, and against plaintiffs, Lawrence Boyle and Gerald Boyle. An appropriate order follows.

---

[10] Because the Court grants the City's Motion on Gerald Boyle's § 1983 claim based on his failure to establish an underlying constitutional violation, it need not consider the City's additional argument that his claim is barred by the applicable two-year statute of limitations. Def.'s Mot. 12.